UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| MVP Logistics, LLC, | Case No. 22-cv-0686 (WMW/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| FDG Express, LLC, | |
| Defendant. | |

---

Before the Court is Plaintiff's motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(2). (Dkt. 11.) For the reasons addressed below, the Court grants in part and denies in part Plaintiff's motion.

## BACKGROUND

Plaintiff MVP Logistics, LLC (MVP), is a motor carrier cargo broker incorporated and headquartered in Minnesota. Hissho Sushi Company (Hissho), a company incorporated and headquartered in North Carolina, is MVP's client. MVP is Hissho's assignee for purposes of the claims MVP raises in this lawsuit. Defendant FDG Express, LLC (FDG), is a cargo motor carrier incorporated and headquartered in Georgia.

On September 14, 2021, MVP and FDG entered into a broker carrier agreement (Agreement). Pursuant to the Agreement, FDG agreed to transport Hissho's cargo (Cargo) from North Carolina to New York and New Jersey. FDG picked up the Cargo in good condition, made some deliveries, and thereafter abandoned the remainder of the Cargo. The contents of the Cargo that FDG did not deliver—sushi, fish and related products—

spoiled. Hissho replaced the spoiled products, which its clients never received, at a cost of $31,925.72.

Pursuant to Section 9 of the Agreement, MVP and FDG agreed that "in the event of loss, damage, or delay in delivery, [FDG] will be liable." Liability is capped at $100,000 per shipment, minus the reasonable salvage value of the damaged commodities. Section 9 of the Agreement provides that "[FDG] will also indemnify [MVP] from any indirect, special or consequential damages that might be recovered against [MVP] under any claim." Section 7 of the Agreement provides that "[FDG] will defend, indemnify, and hold [MVP] harmless from and against all loss, liability, judgment, damage, claim, fine, cost or expense, including reasonable attorney's fees, arising out of or in any relation to [FDG]'s performance under this Agreement or [FDG]'s breach of any of the terms of the agreement."

In January 2022, MVP filed a simplified loss and damage claim (Claim) with FDG and its agent on behalf of Hissho. FDG has not responded to the claim. On February 21, 2022, Hissho and MVP executed an agreement wherein Hissho assigned the Claim to MVP. On February 24, 2022, MVP sent a letter to FDG and its agent, reminding FDG of the Claim. FDG did not respond to MVP's letter.

MVP commenced this lawsuit on March 15, 2022. Count I of the complaint alleges breach of contract. Count II of the complaint alleges liability pursuant to the Carmack Amendment, 49 U.S.C § 14706. FDG has neither responded to the complaint nor appeared

in this case. On May 2, 2022, the Clerk of Court entered default against FDG. MVP now moves for a default judgment against FDG.

## ANALYSIS

To obtain a default judgment, a party must follow a two-step process. The party seeking a default judgment first must obtain an entry of default from the Clerk of Court. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, on MVP's application, the Clerk of the Court entered default as to FDG on May 2, 2022. The entry of default is supported by the record, which reflects that FDG was properly served with the complaint and summons and failed to answer or otherwise respond to the complaint.

After default is entered, the party seeking affirmative relief "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Upon default, the factual allegations in the complaint are deemed admitted except those relating to the amount of damages. Fed. R. Civ. P. 8(b)(6); *accord Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). However, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray*, 595 F.3d at 871 (internal quotation marks omitted); *accord Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010). The Court, therefore, must evaluate the factual basis of both counts MVP advances in its complaint.

### I. Carmack Amendment (Count II)

Count II of MVP's complaint alleges that FDG is liable under the Carmack Amendment. 49 U.S.C. § 14706. Because the Carmack Amendment, if applicable, may preempt MVP's breach-of-contract claim, the Court addresses this claim first.

The Carmack Amendment imposes liability on a motor carrier for "actual loss or injury" to goods damaged in interstate transport. *Id.* § 14706(a)(1). District courts have original jurisdiction over an action brought under Section 14706 "if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs." 28 U.S.C. § 1337. To establish a prima facie case under the Carmack Amendment for injury to goods, a plaintiff must show delivery of the goods to the carrier in good condition, arrival of the goods in damaged condition, and the amount of damages. *See Fuente Cigar, Ltd. v. Roadway Express, Inc.*, 961 F.2d 1558, 1560 (11th Cir. 1992). To establish a prima facie case under the Carmack Amendment for loss of goods in transit, a plaintiff must show "(1) delivery of a quantity of goods to the carrier, (2) arrival at destination of a lesser quantity, and (3) the amount of damages." *Cont'l Grain Co. v. Frank Seitzinger Storage, Inc.*, 837 F.2d 836, 839 (8th Cir. 1988).

Because the Clerk of Court entered default against FDG, the Court must accept as true the allegations in MVP's complaint. *See* Fed. R. Civ. P. 8(b)(6). MVP alleges that, on September 14, 2021, MVP and FDG entered into an agreement whereby FDG contracted to transport Hissho's cargo. FDG picked up the Cargo, which was in good condition and not spoiled. FDG made several deliveries but abandoned the remainder of

the Cargo, thereby failing to deliver all of the Cargo. The undelivered Cargo spoiled. MVP, by means of Hissho's assignment of the Claim to MVP, incurred damages when replacing the spoiled and lost cargo. Accepting MVP's allegations as true, the Court concludes that it has original jurisdiction over this lawsuit and that MVP has established that FDG is liable under the Carmack Amendment.

Accordingly, the Court grants MVP's motion for default judgment on MVP's Carmack Amendment claim, as alleged in Count II of the complaint.

## II.     Breach of Contract (Count I)

Count I of MVP's complaint alleges a breach-of-contract claim against FDG based on the same facts as MVP's Carmack Amendment claim.

To state a claim for breach of contract under Minnesota law, a plaintiff must show: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to [the plaintiff's] right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). Although the United States Court of Appeals for the Eighth Circuit has not directly addressed whether the Carmack Amendment preempts all state-law causes of action resulting from damage to freight during interstate commerce, many courts have so held. *See, e.g.*, *Rush Indus., Inc. v. MWP Contractors, LLC*, 539 F. App'x 91, 95 (4th Cir. 2013) (holding that "the Carmack Amendment preempts [appellant's] state and common law claims"); *Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115, 1120 (9th Cir. 2011) ("It is well settled that the Carmack Amendment is the exclusive cause of action for interstate-

shipping contract claims alleging loss or damage to property and thus completely preempts such claims." (internal quotation marks omitted)); *Tran Enters., LLC v. DHL Express (USA), Inc.*, 627 F.3d 1004, 1008 (5th Cir. 2010) ("Congress intended for the Carmack Amendment to provide the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier." (internal quotation marks and emphasis omitted)); *see also Sunteck Transp. Co. v. King's Express, Inc.*, No. 18-cv-3017 (ECT/LIB), 2019 WL 1238833, at *1 (D. Minn. Mar. 18, 2019); *accord Fulton v. Chi., Rock Island & Pac. R.R. Co.*, 481 F.2d 326, 332 (8th Cir. 1973) ("The cases make it clear that when damages are sought against a common carrier for failure to properly perform, or for negligent performance of, an interstate contract of carriage, the Carmack Amendment governs." (internal quotation marks omitted)).  Based on the foregoing authority, the Court concludes that the Carmack Amendment preempts MVP's state-law claim for breach of contract.

Accordingly, the Court denies MVP's motion for default judgment as to its breach-of-contract claim, as alleged in Count I of the complaint, and dismisses this claim.

### III.  Damages

MVP also seeks an award of damages in its favor.  A district court must ascertain the amount of damages before entering a default judgment.  *See Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000).  A party seeking a default judgment must prove its damages to a reasonable degree of certainty.  *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001).  A district court may determine

damages by computing from the facts of record the amount that the plaintiff is lawfully entitled to recover and enter judgment accordingly. *Pope v. United States*, 323 U.S. 1, 12 (1944).

### A.     Actual Damages

MVP seeks damages for the loss of the Cargo equal to the amount Hissho expended replacing the portion of the Cargo that FDG lost and damaged. The record reflects that MVP requested $31,925.72 from FDG in its Claim, a copy of which MVP appends as an exhibit to its complaint. John Gerold, MVP's chief financial officer, affirms that MVP has been damaged in this amount. Based on this evidence, MVP has established the requested damages to a reasonable degree of certainty. The record, therefore, supports default judgment in the amount of $31,925.72 for the loss of the Cargo.

### B.     Prejudgment Interest

MVP also requests $524.80 in interest on the $31,925.72 in damages at the rate of six percent until May 2, 2022, and at the rate of $5.248 per day thereafter, pursuant to Minnesota Statutes Section 334.01. The Court, however, has dismissed MVP's state-law claim for breach of contract as preempted by the Carmack Amendment and, therefore, FDG's liability arises solely under federal law. "The question of whether interest is to be allowed, and also the rate of computation, is a question of federal law [when] the cause of action arises from a federal statute." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1330 (8th Cir. 1995) (internal quotation marks omitted).

"As a general rule, prejudgment interest is to be awarded when the amount of the underlying liability is reasonably capable of ascertainment" and "should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable." *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986). Absent a statutory directive, prejudgment interests "rests in the discretion of the district court." *Cargill, Inc. v. Taylor Towing Serv., Inc.*, 642 F.2d 239, 241 (8th Cir. 1981). The district court should exercise this discretion in light of the twin purposes that awards of prejudgment interest serve: "to compensate prevailing parties for the true costs of money damages incurred" and, in cases of readily ascertainable liability and damages, "to promote settlement and deter attempts to benefit unfairly from the inherent delays of litigation." *Stroh Container Co.*, 783 F.2d at 752; *accord Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn., LLC*, No. 09-cv-3037 (SRN/LIB), 2015 WL 4771494, at *1 (D. Minn. Aug. 13, 2015); *see also Sunteck Transp. Co. v. King's Express, Inc.*, No. 18-cv-3017 (ECT/LIB), 2019 WL 1238833, at *1 (D. Minn. Mar. 18, 2019) (applying statutory interest rate of the state in which the district court sits when determining prejudgment interest award following default judgment on a Carmack Amendment claim). Thus, although MVP bases its request for an award of prejudgment interest on state law and the Court has dismissed MVP's state-law claim, federal law nonetheless permits an award of prejudgment interest on MVP's successful Carmack Amendment claim.

Prejudgment interest typically accrues from the date of the loss or the date on which a claim arose. *See West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987). The

Agreement between MVP and FDG did not establish an interest rate and no statute governs the rate of prejudgment interest awards under the Carmack Amendment. The Court, therefore, looks to Minnesota's statutory interest rate to determine the appropriate amount of prejudgment interest. *See Sunteck Transp.*, 2019 WL 1238833, at *1. Under Minnesota law, the "interest for any legal indebtedness shall be at the rate of $6 upon $100 for a year, unless a different rate is contracted for in writing." Minn. Stat. § 334.01. The $31,925.72 that FDG owes MVP, therefore, is subject to a six-percent interest rate from January 20, 2022—the date MFP filed the Claim—through the date of judgment in this matter. *See id.*; *West Virginia*, 479 U.S. at 310 n.2.

For these reasons, the Court awards MVP prejudgment interest on its award of $31,925.72 at a rate of six percent from January 20, 2022, until the date of judgment in this matter.

    **C.**     **Attorneys' Fees and Costs**

MVP also seeks $5,885.50 in attorney's fees and $549.74 in costs incurred in litigating this lawsuit. Minnesota law recognizes the freedom of contracting parties to bargain for the remedy of attorneys' fees. *See State Bank of Cokato v. Ziehwein*, 510 N.W.2d 268, 270 (Minn. Ct. App. 1994). Minnesota courts enforce contractual obligations to pay attorneys' fees if the amount of fees allowed under the contract is reasonable. *Id.* Section 7 of the Agreement provides that "[FDG] will defend, indemnify, and hold [MVP] harmless from and against all loss, liability, judgment, damage, claim, fine, cost or expense, including reasonable attorney's fees, arising out of or in any relation

9

to [FDG]'s performance under this Agreement or [FDG]'s breach of any of the terms of this Agreement." Here, FDG's liability under the Carmack Amendment necessarily relates to its performance under the parties' Agreement given the Carmack Amendment's preemption of MVP's breach-of-contract claim. FDG's liability under the Carmack Amendment, therefore, implicates the fee provision of the Agreement.

The Eighth Circuit applies the lodestar method to calculate reasonable attorneys' fees. *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988). Under this method, the lodestar amount is presumed to be the reasonable fee to which counsel is entitled. *Id.* To calculate the lodestar amount, a district court multiplies the number of hours reasonably expended by a reasonable hourly rate, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), which is "in line with [the] prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The party seeking an attorneys' fees award bears the burden to establish entitlement to an award with documentation that addresses the nature of the work and the appropriateness of the hourly rates and hours expended. *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 437).

In support of MVP's motion for default judgment, MVP supplies an affidavit from Michael C. Glover that sets forth in detail MVP's request for attorneys' fees and costs and appends billing records and receipts. MVP requests $5,885.50 in attorney's fees incurred while litigating this lawsuit. In his affidavit, Glover maintains that he has expended $5,095.50 in litigating this matter and that he expects to expend an additional two hours, at

a cost of $790, preparing and arguing MVP's motion for default judgment. Glover is an attorney at DeWitt LLP who charges an hourly rate of $395. The Court has considered these facts along with the Court's experience and knowledge of prevailing market rates, which are consistent with the hourly rates claimed by MVP. Based on the billing records appended to Glover's declaration, MVP has established to a reasonable degree of certainty the reasonableness of the attorneys' fees incurred to date. The Court also concludes that MVP's additional anticipated expenditure of $790 in attorneys' fees in preparing and arguing the motion for default judgment is reasonable. The record, therefore, supports an award of $5,885.50 in attorneys' fees.

MVP also requests $549.74 in costs incurred while litigating this lawsuit. MVP expended $88.50 effecting service of process, $59.24 in certified mail and overnight delivery fees, and $402 in court filing fees. Exhibits A and B to Glover's affidavit include invoices and receipts reflecting the costs MVP incurred. This evidence establishes the reasonableness of the costs incurred to date. The record, therefore, supports an award of costs in the amount of $549.74.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff MVP Logistics, LLC's motion for default judgment, (Dkt. 11), is **GRANTED** as to Count II and **DENIED** as to Count I, as addressed herein.

2. Count I of Plaintiff MVP Logistics, LLC's complaint, (Dkt. 1), is **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk of the Court shall enter judgment as follows:

   a. $31,925.72 in actual damages, subject to a six-percent interest rate from January 20, 2022, until the date of judgment in this case;

   b. $5,885.50 in attorneys' fees; and

   c. $549.74 in costs.

   LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 13, 2022                         s/Wilhelmina M. Wright
                                                Wilhelmina M. Wright
                                                United States District Judge